## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRAHANT SALGUOCAR, CYNTHIA M. LANGFORD, and NAHID HAJARIAN Derivatively on Behalf of NIKOLA CORPORATION, | Case No.: |
| Plaintiffs, | |
| vs. | **JURY DEMANDED** |
| STEVE GIRSKY, MARK RUSSELL, SOPHIA JIN, MIKE MANSUETTI, GERRIT MARX, STEVE CHINDLER, DEWITT THOMPSON, and JEFF UBBEN, | |
| Defendants, | |
| -and- | |
| NIKOLA CORPORATION, | |
| Nominal Defendant. | |

## VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Plaintiffs Prahant Salguocar, Cynthia M. Longford, and Nahid Hajarian ("Plaintiffs") by and through their undersigned counsel, derivatively on behalf of Nominal Defendant Nikola Corporation ("Nikola" or the "Company"), submit this Verified Shareholder Derivative Complaint (the "Complaint"). Plaintiffs' allegations are based upon their personal knowledge as to themselves and their own acts, and upon information and belief, developed from the investigation and analysis by Plaintiffs' counsel, including a review of publicly available information, including filings by Nikola with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits,

and matters of public record.  Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTTION

1.      This is a shareholder derivative action brought on behalf of and for the benefit of Nikola, against certain of its officers and/or directors named as defendants herein seeking to remedy their breaches of fiduciary duties and other wrongful conduct as alleged herein and that occurred from March 3, 2020 to the present (the "Relevant Period").  Defendants' actions have caused, and will continue to cause, substantial financial harm and other damages to Nikola, including damages to its reputation and goodwill.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1) and Rule 14a-9 of the Exchange Act, 17 C.F.R. § 240.14a-9.

3.      Plaintiffs' claims also raise a federal question pertaining to the claims made in the Securities Class Actions based on violations of the Exchange Act.

4.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

5.      This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

6.      Venue is proper in this District because Nikola is incorporated in this District. In

2

addition, a substantial portion of the transactions and wrongs complained of herein occurred in this District, the Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

## PARTIES

### Plaintiffs

7.      ***Plaintiff Prahant Salguocar*** ("Plaintiff Salguocar") acquired Nikola securities during the Relevant Period and will continue to hold Nikola shares throughout the pendency of this action.  Plaintiff Salguocar will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

8.      ***Plaintiff Cynthia M. Longford*** ("Plaintiff Longford") acquired Nikola securities during the Relevant Period and will continue to hold Nikola shares throughout the pendency of this action.  Plaintiff Longford will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

9.      ***Plaintiff Nahid Hajarian*** ("Plaintiff Hajarian") acquired Nikola securities during the Relevant Period and will continue to hold Nikola shares throughout the pendency of this action. Plaintiff Hajarian will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

### Nominal Defendant

10.      ***Nominal Defendant Nikola*** purports to operate as an integrated zero emissions transportation systems provider which designs and manufactures battery-electric and hydrogen-

electric vehicles, electric vehicle drivetrains, vehicle components, energy storage systems, and hydrogen fueling station infrastructure. Defendant Nikola is incorporated in Delaware and maintains its principal executive offices at 4141 E Broadway Road, Phoenix, Arizona 85040. The merger of VectoIQ Acquisition Corp. ("VectoIQ") and Nikola closed on June 3, 2020.

**Director Defendants**

11.     **Defendant Steven Girsky** ("Girsky") previously served as the President, Chief Executive Officer ("CEO") and a director of VectoIQ from January 2018 until June 2020. Defendant Girsky currently serves as the Chairman of the Board of the Directors (the "Board"). Defendant Girsky also serves as Chair of the Audit Committee and as a member of the Nominating and Corporate Governance Committee.

12.     **Defendant Mark A. Russell** ("Russell") has served as the Company's CEO and as a Company director since June 2020.

13.     **Defendant Sophia Jin** ("Jin") has served as a Company director since June 2020. Defendant Jin also serves as a member of the Audit Committee.

14.     **Defendant Mike Mansuetti** ("Mansuetti") has served as a Company director since June 2020. Defendant Mansuetti also serves as a member of the Audit Committee.

15.     **Defendant Gerrit Marx** ("Marx") has served as a Company director since June 2020. Defendant Marx also serves as Chair of the Compensation Committee and as a member of the Nominating and Corporate Governance Committee.

16.     **Defendant Steve Shindler** ("Shindler") served as the Company's CFO from

January 2018 to June 2020.  Defendant Shindler has served as a Company director since October 2020.

17.    **Defendant DeWitt Thompson, V** ("Thompson") has served as a Company director since June 2020.  Defendant Thompson also serves as a member of the Compensation Committee.

18.    **Defendant Jeff Ubben** ("Ubben") has served as a Company director since June 2020.  Defendant Ubben also serves as Chair of the Nominating and Corporate Governance Committee.

19.    Defendants Girsky, Russell, Jin, Mansuetti, Marx, Shindler, Thompson and Ubben are herein referred to as "Director Defendants."

## THE COMPANY'S CORPORATE GOVERNANCE

20.    As members of Board, the Director Defendants were held to the highest standards of honesty and integrity and charged with overseeing the Company's business practices and policies and assuring the integrity of its financial and business records.

21.    The conduct of the Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Nikola, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its investors that the Director Defendants were aware posed a risk of serious injury to the Company

## DUTIES OF THE DIRECTOR DEFENDANTS

22.    By reason of their positions as officers, directors, and/or fiduciaries of Nikola and because of their ability to control the business and corporate affairs of Nikola, the Director

5

Defendants owed the Company and its shareholders the fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Nikola in a fair, just, honest, and equitable manner.  The Director Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders.

23.     Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Director Defendants had a duty to promptly disseminate accurate and truthful information regarding the Company's operations, finances, financial condition, and present and future business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

24.     The Director Defendants, because of their positions of control and authority as directors and/or officers of Nikola, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with Nikola, each of the Defendants had access to adverse non-public information about the financial condition, operations, sales and marketing practices, and improper representations of Nikola.

25.     To discharge their duties, the officers and directors of Nikola were required to

exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Nikola were required to, among other things:

(a)     Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(b)     Conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     Properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(d)     Remain informed as to how Nikola conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

(e)     Ensure that the Company was operated in a diligent, honest, and prudent

manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

(f)     Ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

26.     Each Director Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Nikola, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

27.     The Director Defendants breached their duties of loyalty and good faith by causing the Company to misrepresent the information as detailed infra.  The Director Defendants' subjected the Company to the costs of defending, and the potential liability from, the securities class action (and related lawsuits).  As a result, Nikola has expended, and will continue to expend, significant sums of money.

28.     The Director Defendants' actions have irreparably damaged the Company's corporate image and goodwill.

## COMPANY BACKGROUND AND INFORMATION

8

29.     On March 3, 2020, the Company issued a press release entitled *Nikola Corporation, a Global Leader in Zero Emissions Transportation Solutions, to Be Listed on NASDAQ Through a Merger With VectoIQ*, which quoted Trevor Milton[1]:

> **Trevor Milton, Founder and CEO of Nikola stated**: "*We are on a roll. You couldn't ask for better news for the energy and tech industry*. The world is transitioning to zero emission platforms and Nikola is the leader for heavy duty vehicles. We believe we have a differentiated business model built on economics, not government subsidies. We now need to double down and speed up the timelines and get to market. We couldn't be happier to have Steve Girsky join our board." [Emphasis added].

30.     On March 6, 2020, VectoIQ filed its yearly report on Form 10-K with the SEC for the quarter ended December 31, 2019 (the "2019 Annual Report"). The 2019 Annual Report stated that its "Business Combination Criteria" was as follows:

> Consistent with our strategy, we have identified the following general criteria and guidelines that we believe are important in evaluating prospective target businesses and, in evaluating a prospective target business, ***we expect to conduct a thorough due diligence review that will encompass, among other things, meetings with incumbent management and employees, document reviews and inspection of facilities, as applicable, as well as a review of financial and other information that will be made available to us.*** We intend to use these criteria and guidelines in evaluating acquisition opportunities, but we may decide to enter into our initial business combination with a target business that does not meet these criteria or guidelines.
>
> - Focus on industrial technology, transportation and smart mobility business positioned to benefit from our management team's extensive experience and contacts in these sectors. We believe our strategy leverages our management team's distinctive background and vast network of industry leaders in the target industry.

---

[1]     Trevor Milton ("Milton") is the founder of Nikola Motor and served as the Company's Executive Chairman from June 2020 until his voluntary departure from the Company on September 20, 2020.

- Emphasis on companies that can benefit from a public listing and access to the public capital markets. We will primarily seek a target that we believe will benefit from being publicly traded and will be able to effectively utilize the broader access to capital and the public profile that are associated with being a publicly traded company.

- ***We will target businesses that are market leaders, with established technologies and attractive financial metrics and/or prospects***, where we believe that our industry expertise and relationships can be used to create opportunities for value creation, whether for acquisitions, capital investments in organic growth opportunities or in generating greater operating efficiencies. While this may include business with a history of revenue growth and profitability, we may also target businesses that are underperforming that that we believe can benefit from our expertise and/or technology.

- ***We intend to seek target businesses that have established management teams, but that we believe could benefit from the industry experience and contacts of our management*** . . .

These criteria are not intended to be exhaustive. Any evaluation relating to the merits of a particular initial business combination may be based, to the extent relevant, on these general guidelines as well as other considerations, factors and criteria that our management team may deem relevant. ***In the event that we decide to enter into our initial business combination with a target business that does not meet the above criteria and guidelines, we will disclose that the target business does not meet the above criteria in our stockholder communications related to our initial business combination, which, would be in the form of proxy solicitation materials or tender offer documents that we would file with the SEC.*** [Emphasis added].

31.     The 2019 Annual Report also stated the following regarding the "Selection of a Target Business and Structuring of a Business Combination":

In evaluating a prospective target business, our management may consider a variety of factors, including one or more of the following:

- ***financial condition and results of operation***;

10

- growth potential;
- brand recognition and potential;
- ***experience and skill of management*** and availability of additional personnel;
- capital requirements;
- competitive position;
- barriers to entry;
- stage of development of the products, processes or services;
- existing distribution and potential for expansion;
- ***degree of current or potential market acceptance of the products, processes or services***;
- ***proprietary aspects of products and the extent of intellectual property or other protection for products or formulas***;
- impact of regulation on the business;
- regulatory environment of the industry;
- costs associated with effecting the business combination;
- ***industry leadership, sustainability of market share and attractiveness of market industries in which a target business participates***; and
- macro competitive dynamics in the industry within which the company competes.

These criteria are not intended to be exhaustive. Any evaluation relating to the merits of a particular business combination will be based, to the extent relevant, on the above factors as well as other considerations deemed relevant by our management in effecting a business combination consistent with our business objective. In evaluating a prospective target business, we will conduct an extensive due diligence review which will encompass, among other things, meetings with incumbent management and inspection of facilities, as well as review of financial and other information which is made available to us. This due diligence review will be conducted either by our management or by unaffiliated third parties we may engage, although we have no current intention to engage any such third parties. [Emphasis added].

32.     On March 13, 2020, the Company filed a registration statement on Form S-4 with

the SEC (the "March 2020 Prospectus").  The March 2020 Prospectus provided information on

the process the Company undertook when approving the business combination with Nikola Motor:

As described under "The Background of the Business Combination" above, VectoIQ's board of directors, in evaluating the Business Combination, consulted with VectoIQ's management and financial and legal advisors.  In reaching its unanimous decision to approve the Business Combination Agreement and the transactions contemplated by the Business Combination Agreement, VectoIQ's board of directors considered a range of factors, including, but not limited to, the factors discussed below. In light of the number and wide variety of factors considered in connection with its evaluation of the combination, VectoIQ's board of directors did not consider it practicable to, and did not attempt to, quantify or otherwise assign relative weights to the specific factors that it considered in reaching its determination and supporting its decision. VectoIQ's board of directors viewed its decision as being based on all of the information available and the factors presented to and considered by it. In addition, individual directors may have given different weight to different factors.

33.     The Company filed amendments and revisions to the March 2020 Prospectus on April 15, 2020, May 1, 2020, and May 5, 2020 on Forms S-4/A.

34.     On April 20, 2020, the Company filed a Schedule 14A with the SEC (the "April 2020 Proxy Statement").  The April 20, 2020 Proxy Statement sought to extend the date by which the business combination with Nikola Motor would be consummated in order to obtain stockholder approval of the transaction with Nikola Motor.

35.     The April 2020 Proxy Statement failed to disclose that: (a) the Company failed to adequately conduct due diligence prior to agreeing to merge with Nikola Motor; (b) the Company exaggerated and obscured the background and expertise of its primary employees; (c) the overstated Nikola's hydrogen production and "in-house" capabilities, such as its capacity to design, manufacture, and test its products; (4) consequently, Nikola overplayed its ability to reduce the cost of hydrogen fuel; and (5) the Company failed to maintain internal controls.

36.     On May 8, 2020, the Company filed the May 2020 Proxy Statement with the SEC,

which contained material misstatements and omissions.

37.    The May 2020 Proxy Statement stated regarding the Company's Code of Conduct,

that:

> The New Nikola Board will adopt a Code of Business Conduct and Ethics, or the
> Code of Conduct, applicable to all of New Nikola's employees, executive officers
> and directors. The Code of Conduct will be available on New Nikola's website at
> www.nikolamotor.com. Information contained on or accessible through New
> Nikola's website is not a part of this proxy statement/prospectus/information
> statement, and the inclusion of New Nikola's website address in this proxy
> statement/prospectus/information statement is an inactive textual reference only.
> The nominating and corporate governance committee of the New Nikola Board will
> be responsible for overseeing the Code of Conduct and must approve any waivers
> of the Code of Conduct for employees, executive officers and directors. New
> Nikola expects that any amendments to the Code of Conduct, or any waivers of its
> requirements, will be disclosed on its website.

38.    The May 2020 Proxy Statement was false and misleading because, despite

assertions to the contrary, its Code of Conduct was not followed.

39.    The May 2020 Proxy Statement also described the reasons for the VectoIQ former

Board's reasons for approving the business combination:

> As described under "*The Background of the Business Combination*" above,
> VectoIQ's board of directors, in evaluating the Business Combination, consulted
> with VectoIQ's management and financial and legal advisors. In reaching its
> unanimous decision to approve the Business Combination Agreement and the
> transactions contemplated by the Business Combination Agreement, VectoIQ's
> board of directors considered a range of factors, including, but not limited to, the
> factors discussed below. In light of the number and wide variety of factors
> considered in connection with its evaluation of the combination, VectoIQ's board
> of directors did not consider it practicable to, and did not attempt to, quantify or
> otherwise assign relative weights to the specific factors that it considered in
> reaching its determination and supporting its decision. VectoIQ's board of directors
> viewed its decision as being based on all of the information available and the factors
> presented to and considered by it. In addition, individual directors may have given

13

different weight to different factors.

This explanation of VectoIQ's reasons for the combination and all other information presented in this section is forward-looking in nature and, therefore, should be read in light of the factors discussed under the section titled "*Cautionary Note Regarding Forward-Looking Statements.*"

In approving the combination, VectoIQ's board of directors determined not to obtain a fairness opinion. The officers and directors of VectoIQ have substantial experience in evaluating the operating and financial merits of companies from a wide range of industries and concluded that their experience and background, together with experience and sector expertise of Cowen, enabled them to make the necessary analyses and determinations regarding the Business Combination.

40.     The May 2020 Proxy Statement further outlined the factors taken into consideration

supporting the Company's former Board's decision to support the business combination:

VectoIQ's board of directors considered a number of factors pertaining to the Business Combination as generally supporting its decision to enter into the Business Combination Agreement and the transactions contemplated thereby, including, but not limited to, the following:

•      ***Highly Disruptive Technology. VectoIQ's management and board of directors believe that Nikola is a market disruptor*** in an attractive and growing industry with over 70 patents issued or pending and strong growth prospects within the hydrogen fuel, BEV and FCEV sectors as well as adjacent markets;

•      *Strategic Partnerships.* VectoIQ's management and board of directors considered Nikola's strategic partnerships with industry leaders, which it believes reduce Nikola's technology and execution risk from truck and hydrogen station development to truck sales and maintenance;

•      *High Demand for Product.* VectoIQ's management and board of directors considered the fact that Nikola has a high volume of fuel cell electric vehicle pre-orders, currently at over $10 billion, as well as contracts with top tier customers with investment-grade credit ratings;

•      *Platform Supports Further Growth Initiatives.* VectoIQ's management and board of directors believe that Nikola's business model uniquely supplies both the

14

truck and hydrogen fueling infrastructure, solving the fleets' concerns as to where to refuel with green hydrogen at competitive pricing to diesel;

• *Due Diligence. VectoIQ's management and board of directors conducted due diligence examinations of Nikola and discussions with Nikola's management and VectoIQ's financial and legal advisors concerning VectoIQ's due diligence examination of Nikola*;

• *Financial Condition*. VectoIQ's board of directors also considered factors such as Nikola's outlook, financial plan and debt structure, as well as valuations and trading of publicly traded companies and valuations of precedent combination and combination targets in similar and adjacent sectors (see "—Certain Nikola Projected Financial Information");

• *Attractive Market Valuation of Comparable Companies*. The public trading market valuation of comparable "future transportation" companies (consisting of NIO, Tesla and Virgin Galactic, which we refer to collectively as the "Comparable Future Transportation Companies") have expected 2020 enterprise value/revenue multiples and enterprise value/EBITDA multiples (in each case based on market data as of February 28, 2020) ranging from 3.3x to 650+x (and a median of 4.0x) and up to 29.5x, respectively. The public trading market valuation of comparable fuel cell technology companies (consisting of Ballard, Bloom Energy, Nel and Plug Power, which we refer to collectively as the "Comparable Fuel Cell Technology Companies") have expected 2020 enterprise value/revenue multiples and enterprise value/EBITDA multiples (in each case based on market data as of February 28, 2020) ranging from 1.7x to 14.7x (and a median of 9.5x) and up to 77.3x (and a median of 47.8x), respectively. . . . For example, when applying the median 2020 enterprise value/revenue multiple for the Comparable Fuel Cell Technology Companies of 9.5x to Nikola's 2024 projected revenue, the initial market valuation of the post-Business Combination company implies a 67.6% annual discount rate from December 31, 2024 to June 30, 2020. Since Nikola's business is not expected to achieve scale until 2024, the VectoIQ board of directors believes this present value methodology is the most reasonable method of comparison. Although this analysis is based on the current Nikola projections, the valuation multiples decline each year as a result of the high growth projected for Nikola's business;

• *Experienced and Proven Management Team. VectoIQ's management and board of directors believe that Nikola has a strong management team which is expected to remain with the combined company to seek to execute Nikola's strategic and growth goals*;

15

41.     The Proxy Statement also stated the following regarding the Company's hydrogen

production capabilities and VectoIQ's due diligence:

Q.     **Who is Nikola?**

A.     Nikola is a vertically integrated zero-emissions transportation solution
       provider that designs and manufactures state-of-the-art battery-electric and
       hydrogen fuel cell electric vehicles, electric vehicle drivetrains, energy
       storage systems, and hydrogen fueling stations. Nikola's core product
       offering is centered around its battery-electric vehicle ("BEV") and
       hydrogen fuel cell electric vehicle ("FCEV") Class 8 semi-trucks. The key
       differentiator of Nikola's business model is its planned network of hydrogen
       fueling stations. Nikola is offering a revolutionary bundled lease model,
       which provides customers with the FCEV truck, hydrogen fuel, and
       maintenance for a fixed price per mile, locks in fuel demand and
       significantly de-risks infrastructure development. See "Information About
       Nikola."

                                    * * *

During the week of November 25, 2019, members of the management teams from
both companies met at Nikola's' headquarters in Phoenix, Arizona to enable
VectoIQ's management to learn more about Nikola's current and planned business.
Throughout the week the management teams also held calls to discuss scheduling
for continued due diligence meetings as well as a timeline for a potential
combination.  During this period, VectoIQ assembled a number of industry experts
to advise with respect to vehicle development, electrification, fuel cells, software,
connectivity and manufacturing in connection with its due diligence efforts.

During the week of December 2, 2019, representatives of VectoIQ and Nikola held
a technical due diligence call and VectoIQ had discussions with industry experts on
commercial conditions in the Class 8 Hydrogen and Electrification markets.

                                    * * *

*First Test Station Installed at Nikola's Phoenix HQ*

Through our partnership with Nel ASA, a Norwegian hydrogen company ("Nel"),

16

we have initiated the development of the hydrogen station infrastructure by completing our first 1,000 kg demo station in the first quarter of 2019 at our corporate headquarters in Phoenix, Arizona. The demo hydrogen station offers hydrogen storage and dispensing and serve as a model for future hydrogen stations.

42.    The May 2020 Proxy Statement described the Company's business as follows:

**1.    DESCRIPTION OF BUSINESS AND BASIS OF PRESENTATION**

Nikola Corporation ("Nikola" or the "Company") is a designer and manufacturer of battery-electric and hydrogen-electric vehicles, electric vehicle drivetrains, vehicle components, energy storage systems, and hydrogen stations.

***The Company is also developing a network of hydrogen fueling stations to meet hydrogen fuel demand for its customers. Fueling related activities will be conducted through the Company's wholly-owned subsidiary, Nikola Energy***. [Emphasis added].

43.    The Proxy Statement stated the following regarding the Company's "in-house" designing, manufacturing, and testing capabilities:

In June 2019, Nikola moved into our state-of-the-art headquarters and R&D facility in Phoenix, Arizona, which consists of more than 150,000 square feet and ***where we are capable of designing, building, and testing prototype vehicles in-house.*** [Emphasis added].

44.    The May 2020 Proxy Statement failed to disclose that: (a) the Company failed to adequately conduct due diligence prior to agreeing to merge with Nikola Motor; (b) the Company exaggerated and obscured the background and expertise of its primary employees; (c) the Company overstated Nikola's hydrogen production and "in-house" capabilities, such as its capacity to design, manufacture, and test its products; (d) consequently, Nikola overplayed its ability to reduce the cost of hydrogen fuel; and (e) the Company failed to maintain internal controls.

45.     On May 15, 2020, Milton tweeted the following regarding the Company's capabilities:

> I laugh when articles say Nikola is all talk. 300+ mile battery and 500+ mile fuel cell to be produced by @nikolamoto& @IVECO.  ***These are real.  Our tech is years ahead.*** Production starts next year & Factory being prepped now in Germany. Watch while others follow the boss. [Emoji and images omitted.] https://twitter.com/nikolatrevor/status/1261306736528388098.  [Emphasis added].

46.     On June 3, 2020, the Company issued a press release reporting the closing of the business combination between VectoIQ and Nikola Motor:

> The business combination, which was approved on June 2, 2020 by VectoIQ stockholders, further solidifies Nikola as a global leader in zero-emissions transportation and infrastructure solutions. On June 4, 2020, the combined company's shares will trade on the Nasdaq under the new ticker symbol "NKLA."
>
> * * *
>
> "Nikola is thrilled to complete the Nasdaq listing and be part of the ESG investment world. This is a significant endorsement in fuel-cell and battery-electric technology. Since Nikola launched its first fuel-cell semi-truck, you have seen the world rally behind hydrogen and follow our lead. What was once considered the fuel of the future is now accepted as today's solution," said Nikola's Founder and Executive Chairman Trevor Milton. "With our Nikola IVECO joint venture and over $10 billion in pre-order reservations, Nikola is positioned to be a wonderful story of how one company can literally change the world."

47.     On June 6, 2020, Milton tweeted the following regarding the Company's in-house capabilities:  "***All the technology, software, controls, E axle, inverters etc. we do internally***.  We joint venture with those that know the supply chain and manufacturing like Iveco. We outsource autonomy.         ***We        outsource        hardware        production***."  https://twitter.com/nikolatrevor/status/1269255746434158599.  (Emphasis added).

48.     On July 1, 2020, Milton tweeted the following regarding Nikola's in-house capabilities:

> We don't make the cells. We make the entire pack like the top guys do. ***We do have an OEM making our truck but all internals are Nikola's IP; batteries, inverters, software, ota, infotainment, controls, etc. We own it all in house. Just not the plant         to         build         the         truck*** https://twitter.com/nikolatrevor/status/1278362710074220544. [Emphasis added].

49.     On July 5, 2020, Milton tweeted the following regarding the Company's in-house capabilities stating:

> "I'm talking about stuff that has no value; cabs, windows, seats or seat belts or ac units. All major components are done in house; batteries, inverters, software, controls,infotainment, over the air, etc., you don't care about the truth you're just out         to         be         a         keyboard         warrior." https://twitter.com/nikolatrevor/status/1279673731435159556.

50.     On July 15, 2020, Milton tweeted a video and the following:

> 0-60 in under 5 seconds in the #nikolatwo hydrogen semi truck. Damn was fast! . ***Edited / professional content coming soon for everyone but here's my raw cell phone         behind         the         scene***. https://twitter.com/nikola trevor/status/1283425947199221761?s=20.

> ***Yeah, we'll be posting Go Pro video that's being edited, etc . Be up soon showing 0-60 camera time***, outside view and also side by side against a diesel truck. This is just a teaser shot https://twitter.com/nikolatrevor/status/12834 29144970158080.

> ***Actually around 5 seconds. That's 10 seconds to hit 60 and slow down. Around that time, exact timing to be shown in the edited videos coming out next month***. Side   by   side   diesel   comparison,   etc. https://twitter.com/nikola trevor/status/1283430654395314176. [Emphasis added].

51.     On July 17, 2020, the Company filed a prospectus with the SEC on Form 424B3 (the "July 17, 2020 Prospectus").   The July 17, 2020 touted the Company's unique product

offerings:

> We are a vertically integrated zero-emissions transportation solution provider that designs and manufactures state-of-the-art battery-electric and hydrogen fuel cell electric vehicles, electric vehicle drivetrains, energy storage systems, and hydrogen fueling stations. Our core product offering is centered around our battery-electric vehicle ("BEV") and hydrogen fuel cell electric vehicle ("FCEV") Class 8 semitrucks. ***The key differentiator of our business model is our planned network of hydrogen fueling stations. We are offering a revolutionary bundled lease model, which provides customers with the FCEV truck, hydrogen fuel, and maintenance for a fixed price per mile, locks in fuel demand and significantly de-risks infrastructure development***.  [Emphasis added].

52.     The July 17, 2020 Prospectus boasted of the Company's Truck, Energy, and

Powersports business units:

> The Truck business unit is developing and commercializing battery-electric vehicle ("BEV") and hydrogen fuel cell electric vehicle ("FCEV") class 8 trucks that provide environmentally friendly, cost-effective solutions to the short haul and long-haul trucking sector. The Energy business unit is developing and constructing a network of hydrogen fueling stations to meet hydrogen fuel demand for FCEV customers. The Powersports business unit is developing electric vehicle solutions for military and outdoor recreational applications.

53.     The July 17, 2020 Prospectus, under a section titled, "Who We Are," described the

Company's business and prospects:

> Nikola's vision is to be the zero-emissions transportation industry leader. We plan to realize this vision through world-class partnerships, groundbreaking R&D, and a revolutionary business model.
>
> * * *
>
> We believe our station network will provide a competitive advantage and help accelerate the adoption of our FCEVs. We believe our product portfolio and hydrogen fueling network provides a key strategic advantage that differentiates Nikola from competitors and will allow us to disrupt the estimated $600 billion global heavy-duty commercial vehicle and the related fueling and maintenance

ecosystems.

54.     The July 17, 2020 Prospectus also described Nikola's "total addressable market": "[g]lobally, the total addressable market ("TAM"), is estimated to be a $600 billion per-year with steady growth expected to continue as commerce and global economic growth fuel the need for more heavy-duty trucks."

55.     The July 17, 2020 Prospectus also maintained that "Nikola's unique bundled lease which included the FCEV truck, fuel, and maintenance, will allow us to expand our total addressable market significantly when compared to traditional OEMs."

56.     The July 17, 2020 Prospectus touted Nikola's seemingly solid market positioning:

As the commercial transportation sector transitions towards zero-emission solutions, we believe there will be a need to offer tailored solutions that meet the needs of each customer. Unlike the passenger vehicle market, where users typically return home each day, the commercial vehicle market contains multiple use cases often requiring vehicles to be out on the road for days, or weeks at a time. By offering both BEVs (for short-haul) and FCEVs (for medium- and long-haul), we believe Nikola is uniquely positioned to disrupt the commercial transportation sector by providing solutions that address the full range of customer needs.

57.     The July 17, 2020 Prospectus also described Company's product offerings and proprietary technologies:

We have developed an extensive portfolio of proprietary technologies that are embedded and integrated in our highly specialized BEV and FCEV zero-emission vehicles. In addition, we plan to leverage our zero-emission powertrain expertise to address transportation adjacencies as exemplified with our Powersports product offerings.

* * *

Our management team is primarily focused on the core semi-truck and hydrogen

21

station programs. However, we believe that we can leverage our zero-emission powertrain expertise to address transportation adjacencies. Our Powersports product offerings provide significant benefits to our core semi-truck and hydrogen station programs, including branding halo, driving awareness of Nikola and our industry-defining technology, and R&D synergies on electric drivetrain, battery technology, and other core components.

\* \* \*

Nikola's bundled lease includes maintenance for its vehicles. Service and maintenance of an electric vehicle is expected to be lower than the traditional ICE vehicle which has been proven in the electric passenger vehicle market. Fewer parts and considerably reduced complexity of the key drivetrain components should result in fewer breakdowns and less preventive maintenance, leading to better uptime and lower maintenance cost to operators. Reduced downtime could also lead to increased revenue for fleets as asset productivity increases.

58.     The July 17, 2020 Prospectus also outlined the Company's plans and expectations

regarding its vehicles, services, and maintenance infrastructure:

In addition to building heavy-duty zero-emission trucks, Nikola is also developing fueling and charging stations in North America and Europe to support our FCEV fleet customers and to help capture first mover advantage with respect to next generation fueling infrastructure. Over the next 8 to 10 years, Nikola intends to collaborate with strategic partners to build up to 700 fueling and charging stations in North America and approximately 70 fueling and charging stations in Europe.

\* \* \*

A key requirement for our fleet customers is knowing there is an available service infrastructure for the maintenance and repair of our vehicles. Nikola is building a strong network of providers, a robust preventive maintenance program, as well as several levels of service depending on the complexity and type of maintenance required.

Nikola's plans with respect to the service and maintenance of its vehicles is expected to include the following:

- Electric vehicles have a system of sensors and controls that allow for precise

monitoring of the vehicle and component operation performance. We will use this data to provide smart predictive maintenance, which will decrease downtime and costs by identifying a potential problem before it results in a breakdown.

- Nikola will have the ability to provide over the air updates and software fixes when the vehicle is stopped. This can significantly reduce the time for repair and improve uptime.

- In cases where a customer has their own maintenance infrastructure, we will identify and provide procedures for items that can be maintained at their shops. This could include procedures such as tire changes, wiper and windshield repair and brake servicing.

- In cases where the customer does not have a maintenance infrastructure or for more complex items, Nikola is leveraging its exclusive partner Thompson Caterpillar for maintenance and warranty work. Customers will have access to an already established network of 800 service stations as well as the ability to deploy a mobile service model. We will also support our partners with technologies like augmented reality and web-enabled video to support technicians for very complex tasks or newly identified issues.

- If a vehicle requires maintenance of a complex system such as the fuel cell or battery, some of those items can be swapped or replaced with relative ease. This allows us to repair the downed component in the background and minimize vehicle downtime. We are also planning to develop a network of trained technicians that can travel to a customer or service partner site as necessary.

59.     The July 17, 2020 Prospectus outlined the Company's partnership philosophy as follows:

Nikola's vision will be realized through a revolutionary business model, groundbreaking R&D, disciplined execution, and world-class partnerships. Our business model is validated and supported by world-class strategic partnerships that significantly reduce execution risk, improve commercialization timeline, and provide a long-term competitive advantage. These world-class partners have accelerated our internal development, growth, and learning and have positioned us to revolutionize the transportation sector. We believe our partnerships help increase

23

the depth and breadth of our competitive advantage as well.

Our partnership philosophy is a recognition that the world's toughest challenges require bold solutions and a collaborative effort from multiple parties. Our goal is to provide zero-emission solutions to the transportation sector and to usher in next generation grid solutions. With the help of our partners, we believe our chances of success are greatly improved. At Nikola, we are inspired by the knowledge that if we are successful, the whole world wins.

60.     On July 22, 2020, Milton tweeted the following regarding the Company's Tre model trucks:

We break ground on our factory tomorrow. ***We have 5 units coming off assembly line now in Ulm Germany***. We will be first to market with 300+ mile BEV. Say something nice, do your research or don't comment. [Emoji omitted.] https://twitter.com/nikolatrevor/status/1285999780473135104/
We are breaking ground on our factory tomorrow bud. 5 Units coming off assembly lines in Germany for testing and we'll be first to market with a 300+ mile BEV. At least be objective. Give props when due. https://twitter.com/nikolatrevor/status/1286008500443701248. [Emphasis added].

61.     On July 27, 2020, the Company filed another prospectus with the SEC on Form 424B3, which contained substantially the same statements outlined above from the July 17, 2020 Prospectus.

62.     On August 4, 2020, the Company filed its quarterly report on Form 10-Q with the SEC for the quarter ended June 30, 2020 (the "2Q20 Report"). The 2Q20 Report stated the following regarding the Company's hydrogen capabilities:

We are a vertically integrated zero emissions transportation systems provider that designs and manufactures state of the art battery electric and hydrogen electric vehicles, electric vehicle drivetrains, energy storage systems, and hydrogen fueling stations. To date, we have been primarily focused on delivering zero emission Class 8 trucks to the commercial transportation sector in the U.S. and in Europe. Our core product offering includes battery electric and hydrogen fuel cell electric trucks and

24

hydrogen fuel.

We operate in three business units: Truck, Energy and Powersports. The Truck business unit is developing and commercializing BEV and FCEV Class 8 trucks that provide environmentally friendly, cost effective solutions to the short haul and long haul trucking sector. The Energy business unit is developing and constructing a network of hydrogen fueling stations to meet hydrogen fuel demand for our FCEV customers. The Powersports business unit is developing electric vehicle solutions for military and outdoor recreational applications.

63.     With respect to the Company's disclosure controls and procedures, the 2Q20 10-Q

maintained:

We maintain a system of disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 (the "Exchange Act") designed to ensure that the information required to be disclosed by us in the reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the rules and forms of the Securities and Exchange Commission, and is accumulated and communicated to our management, including our Chief Executive Officer (our principal executive officer) and Chief Financial Officer (our principal financial officer), as appropriate, to allow timely decisions regarding required disclosure.

Our management, with the participation of our Chief Executive Officer and our Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures under the Exchange Act as of June 30, 2020, the end of the period covered by this Quarterly Report on Form 10-Q. Based on such evaluation, our Chief Executive Officer and our Chief Financial Officer have concluded that, as of date, our disclosure controls and procedures were effective.

* * *

There were no changes in our internal control over financial reporting, as identified in connection with the evaluation required by Rule 13a-15(d) and Rule 15d-15(d) of the Exchange Act, that occurred during the three months ended June 30, 2020 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

64.     The Company also hosted an earnings call for analysts and investors on August 4,

2020.    During the call, Defendant Russell touted the Company's business operations and prospects:

> Nikola is a vertically integrated zero emissions transportation systems provider. We design and manufacture battery electric and hydrogen fuel cell electric vehicles along with the battery charging systems and hydrogen fueling stations to power them. Our core global offering centers on heavy commercial trucks. Our long haul commercial transport solution is especially unique with a revolutionary bundled lease or freight-as-a-service model. We provide customers with a fuel cell electric truck, the hydrogen fuel it needs and the all scheduled maintenance for a fixed total cost.
>
> All the customer needs to provide is a driver. This approach has proven very attractive and many customers are finding that they will be able to transition to zero emissions without an increase in total cost compared to their current fossil fuel solution. Our fuel cell electric truck reservation book exceeded 14,000 units or approximately $10 billion in potential revenue sometime ago.
>
> Since then we focused our efforts on direct partnerships with customers, who have dedicated routes rolling out our hydrogen station network along corporate customers dedicated routes or milk runs allows us to guarantee a high degree of hydrogen station utilization and avoid speculative investments in fueling infrastructure. Stations are being developed based on known customer demand along established dedicated routes.

65.    In response to a question regarding the Company's future business offerings encompassing more than trucking and fuel stations, Defendant Russell teased:

> Well . . . *you have to trust us*, as there's a lot more going on than you see in the announcements. As you know, we're talking to lots of folks. We were talking to lots of folks before, but now this seems like just about everybody in the world knows about us. We're having lots of conversations with lots of people. And when we are able to announce those publicly, we're going to do it just as Kim said. A lot of the people we're talking to would like to keep those conversations confidential for now.
>
> And so that's one of the reasons we don't announce everything that we have going on. But when we have something that we can publicly announce and you're going

26

to hear about it. I will make one additional to Kim's point before. ***There's going to be a lot of cool things in Nikola world.*** You want, you want to be there? We won't wait. If we have something that's material, of course, we're going to announce it. [Emphasis added].

66.     In response to a question concerning the grid and the part hydrogen would play in addressing the demand in the energy market, Defendant Russell stated:

One of the great benefits of what Nikola is bringing to the world is the ability to balance the renewable energy that's coming into the grid.

\* \* \*

So one of the great things that Nikola offers to the world is when we put these hydrogen stations in and we start to get a lot of them in there, it represents a tremendous amount of demand for electricity that can match up to the supply. So we can make a – we can make hydrogen when the electricity is available and then we don't have to add significant demand to the peak.

\* \* \*

And so you got this mismatch between the peak of renewable production, if the wind happens to be blowing optimally around noon, and the sun always shines optimally at noon, then you've got way too much power at that point. And then but sometime around between four o'clock and seven o'clock you don't have enough.

Well, guess what, when Nicola is there in bulk, which we're going to be in volume. We can take a lot of that extra power at the peak and turn it into hydrogen. And then we don't have to be pulling power when the rest of the grid needs it so badly at the peak of demand.

67.     On August 10, 2020, the Company issued a press release announcing a "Landmark Order of 2,500 Battery-Electric Waste Trucks from Republic Services." The press release stated:

"Nikola specializes in heavy-duty, zero-emission Class 8 trucks. The refuse market is one of the most stable markets in the industry and provides long-term shareholder value," said Nikola Founder and Executive Chairman Trevor Milton. "The Nikola Tre powertrain is ideal for the refuse market as it shares and uses the same batteries,

controls, inverters and e-axle. By sharing the Tre platform, we can drive the cost down for both programs by using the same parts. You couldn't pick a better partner than Republic Services, a leader in long-term environmental sustainability and customer service. Republic Services will help us ensure the Nikola Tre meets customer and fleet lifecycle demands and we are excited to have them participate in the design process."

68.     The press release further quoted Russell, who touted the significance of the large order, stating, "[t]his is a game changer," and explaining that "[r]efuse truck customers have always ordered chassis from truck OEMs and bodies from other suppliers. Nikola has fully integrated the chassis and body, covering both with a single factory warranty. Trucks will include both automated side loaders and front-end loaders — all of which will be zero-emission."

69.     On August 13, 2020, Milton tweeted the following regarding Nikola's hydrogen production capabilities: "We currently make our own green H2 for under $4 / kg. We are open to others down the road but we have our stations going up and need to focus on completing ours first. Then we can work with others as we expand." https://twitter.com/nikolatrevor/status/1294075433407791104.

70.     On September 8, 2020, the Company issued a press release announcing a strategic partnership between Nikola and GM.  The press release stated, in relevant part:

"Nikola is one of the most innovative companies in the world. General Motors is one of the top engineering and manufacturing companies in the world. You couldn't dream of a better partnership than this," said Nikola Founder and Executive Chairman Trevor Milton.  "By joining together, we get access to their validated parts for all of our programs, General Motors' Ultium battery technology and a multi-billion dollar fuel cell program ready for production. Nikola immediately gets decades of supplier and manufacturing knowledge, validated and tested production ready EV propulsion, world-class engineering and investor confidence. Most importantly, General Motors has a vested interest to see Nikola succeed. We made

28

three promises to our stakeholders and have now fulfilled two out of three promises ahead of schedule. What an exciting announcement."

71.     The statements referenced above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were  known to the Director Defendants or recklessly disregarded by them.  The Director Defendants made false and/or misleading statements and/or failed to disclose that: (a) VectoIQ did not engage in proper due diligence regarding its merger with Nikola; (b) Nikola overstated its "in-house" design, manufacturing, and testing capabilities; (c) Nikola overstated its hydrogen production capabilities; (d) as a result, Nikola overstated its ability to lower the cost of hydrogen fuel; (e) Milton tweeted a misleading "test" video of the Company's Nikola Two truck; (f) Nikola did not have five Tre trucks completed; and (h) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

## THE TRUTH EMERGES

72.     On September 10, 2020, Hindenburg Research published a report (the "Report") describing how: (a) the Company claims to design key components in house, but they appear to simply be buying or licensing them from third-parties; (b) the Company has not produced hydrogen; (c) a spokesman for Powercell AB, a hydrogen fuel cell technology company that formerly partnered with Nikola, called Nikola's battery and hydrogen fuel cell claims "hot air"; (d) Nikola staged a "test" video for its Nikola Two; and (e) Nikola did not have five Tre trucks completed.

73.     The Report alleged that the Company overstated its "in-house" design, manufacturing, and testing capabilities:

> Trevor claims Nikola designs all key components in house, but ***they appear to simply be buying or licensing them from third-parties. One example: we found that Nikola actually buys inverters from a company called Cascadia. In a video showing off its "in-house" inverters, Nikola concealed the Cascadia label with a piece of masking tape***.

* * *

> ***Despite regularly claiming to develop almost everything in-house, Nikola quietly outsourced the NZT redesign to a small company called Stellar Strategy LLC*** (https://stellarstrategyllc.com/). Stellar is staffed by former executives of Polaris (https://offroad.polaris.com/en-us/), a well-known producer of off-road vehicles who had advised Nikola on the open cabin version.

74.     The Report alleged that the Company overstated its hydrogen production capabilities and its ability to cost costs of hydrogen fuel, stating, in pertinent part:

> ***A spokesman for Volvo spin-off Powercell AB, a hydrogen fuel cell technology company that formerly partnered with Nikola, called Nikola's battery and hydrogen fuel cell claims "hot air"***. . . .

> Inexpensive hydrogen is fundamental to the success of Nikola's business model. Trevor has claimed in a presentation to hundreds of people and in multiple interviews to have succeeded at cutting the cost of hydrogen by ~81% compared to peers and to already be producing hydrogen. ***Nikola has not produced hydrogen at this price or at any price as he later admitted when pressed by media.***

> Trevor has appointed his brother, Travis, as "Director of Hydrogen Production/Infrastructure" to oversee this critical part of the business. Travis's prior experience looks to have largely consisted of pouring concrete driveways and doing subcontractor work on home renovations in Hawaii.

75.     On this news, the Company's stock price fell $4.80 per share, or 11.33%, to close at $37.57 per share on September 10, 2020.

76.     Then, on September 14, 2020, after the market had closed, *Bloomberg* reported that the SEC was investigating Nikola in connection with the allegations in the Hindenburg Report.

77.     Finally, on September 15, 2020, during intra-day trading, *The Wall Street Journal* reported that the United States Department of Justice ("DOJ") had joined the SEC's investigation of Nikola.

78.     On this news, the Company's stock fell an additional $0.17 per share during intra-day trading, to close at $32.83 on September 15, 2020, an 8.27% decline from its previous close on September 14, 2020.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

79.     Plaintiffs bring this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties and gross mismanagement by the Director Defendants.

80.     Plaintiffs will adequately and fairly represent the interests of Nikola in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

81.     Plaintiffs are current owners of the Company stock and has continuously been an owner of Company stock during all times relevant to the Director Defendants' wrongful course of conduct alleged herein.  Plaintiffs understand their obligation to hold stock throughout the duration of this action and are prepared to do so.

82.     Because of the facts set forth herein, Plaintiffs have not made a demand on the Board of Nikola to institute this action against the Director Defendants.  Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

83.     The Nikola Board is currently comprised of eight (8) members - Russell, Girsky, Jin, Mansuetti, Marx, Stalberg, Thompson, and Ubben.  Thus, Plaintiffs are required to show that a majority of Defendants, *i.e.*, four (4), cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

84.     The Director Defendants face a substantial likelihood of liability in this action because they caused Nikola to issue false and misleading statements concerning the information described herein.  Because of their advisory, executive, managerial, and directorial positions with Nikola, the Director Defendants had knowledge of material non-public information regarding the Company and were directly involved in the operations of the Company at the highest levels.

85.     The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

86.     The Director Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.  For the reasons that follow, and for reasons detailed elsewhere in this

Complaint, Plaintiffs have not made (and should be excused from making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

87.    Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

88.    Each of the Director Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

89.    Additionally, each of the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

### THE DIRECTOR DEFENDANTS ARE NOT INDEPENDENT

**Defendant Russell**

90.    Defendant Russell has served as the Company's CEO since June 2020 and previously served as a director of Nikola Motor since February 2019.  Defendant Russell is a non-independent director.  Defendant Russell receives and is entitled to handsome compensation. Defendant Russell personally signed off on several of the false and misleading statements,

including those made in the 2Q20 10-Q, which he signed and signed a SOX certification for, the August 4, 2020 conference call, and the August 10, 2020 press release.  As the Company's highest officer Defendant Russell conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets.  Furthermore, Defendant Russell is a defendant in the securities class actions entitled *Salem v. Nikola Corporation, et al.*, Case 2:20-cv-04354-GRB-SIL (E.D.N.Y.), *Borteanu v. Nikola Corporation, et al.*, Case 2:20-cv-01797-SPL (D. Az.) and *Wojichowski v. Nikola Corporation, et al.*, Case 2:20-cv-01819-DLR (the "Securities Class Actions").

**Defendant Girsky**

91.     Defendant Girsky has served as a Company director since June 2020 and has served as Chairman of the Board since September 2020.  Defendant Girsky also serves as Chair of the Audit Committee and as a member of the Nominating and Corporate Governance Committee.  Defendant Girsky previously served as the CEO of VectoIQ.  Defendant Girsky receives and is entitled to handsome compensation.  As a trusted Company director and Chair of the Audit Committee, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets.  Furthermore, Defendant Girsky is a defendant in one of the Securities Class Actions.

**Defendant Jin**

92.     Defendant Jin has served as a Company director since June 2020 and previously served as a director of Nikola Motor since May 2019.  Defendant Jin also serves as a member of the Audit Committee.  Defendant Jin receives and is entitled to receive handsome compensation. As a trusted Company director and member of the Audit Committee, she conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded her duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets.

**Defendant Mansuetti**

93.     Defendant Mansuetti has served as a Company director since June 2020 and previously served as a director of Nikola Motor since September 2019.   Defendant Mansuetti also serves as a member of the Audit Committee.  Defendant Mansuetti receives and is entitled to receive handsome compensation, as discussed above.  As a trusted Company director and member of the Audit Committee, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets.

**Defendant Steve Shindler**

94.     Defendant Shindler is a defendant in one of the Securities Class Actions.

**Additional Reasons Demand Is Futile**

35

95.     All of the Directors benefitted directly from the wrongdoing alleged herein, as the false and misleading statements caused the Company's stock price to be artificially inflated, thus increasing the value of Nikola stock and RSUs held by the Directors pursuant to the 2020 Plan. According to the May 2020 Proxy Statement, the Directors were all interested in the business combination between VectoIQ and Nikola Motor as they held direct or indirect ownership interest in Nikola Preferred Stock and/or Nikola Common Stock.

96.     The Directors are party to certain related party agreements with the Company and certain of the individual Defendants. For instance, Defendants Marx, Ubben, Mansuetti, and Jin are affiliated with entities that purchased millions of dollars' worth of Nikola Series D or C preferred stock in equity finance arrangements with the Company.  Defendant Thompson is also the beneficiary of a service agreement from December 2016 with the Company in which his company is the exclusive distributor of certain repair services for the Company and is entitled to certain commissions for each Nikola vehicle he sells to a third party.  According to the May 2020 Proxy Statement, "New Nikola's audit committee will approve only those transactions that it determines are fair to us and in New Nikola's best interests.  All of the transactions described above were entered into prior to the adoption of such policy."  These conflicts of interest precluded the Directors from adequately monitoring the Company's operations and internal controls and calling into question the individual Defendants' conduct.

**The Audit Committee Defendants – Girsky, Jin and Mansuetti**

36

97.     Defendants Girsky, Jin, and Mansuetti (the "Audit Committee Defendants") serve on the Company's Audit Committee.  Pursuant to the Audit Committee Charter, Audit Committee Defendants were responsible for overseeing Nikola's accounting and financial reporting processes and internal control over financial reporting, the audit and integrity of the Company's financial statements, and the Company's compliance with applicable law.  As a result of the Audit Committee's failures of management and oversight, the Audit Committee Defendants face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

## COUNT I

### (Against The Director Defendants For Breach Of Fiduciary Duty)

98.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

99.     The Director Defendants owe the Company fiduciary obligations.  By reason of their fiduciary relationships, the Director Defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

100.    The Director Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

101.    The Director Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties.  Among other things, the Director Defendants breached their fiduciary duties of loyalty and good faith by causing the Company to make false and misleading

statements that failed to disclose that: (a) the Company failed to adequately conduct due diligence prior to executing the merger with Nikola Motor; (b) the Company exaggerated and obscured the background and expertise of its primary employees; (c) the Company overstated Nikola's hydrogen production and "in-house" capabilities, such as its capacity to design, manufacture, and test its products; (d) consequently, Nikola overplayed its ability to reduce the cost of hydrogen fuel; (e) contrary to various representations, the Company did not in fact have five Tre trucks "coming off the assembly line right now"; (f) the aforementioned misrepresentations painted a false image of the Company which artificially inflated Nikola's stock price and subjected the Company to predicable heightened regulatory scrutiny and exposure; and (g) the Company failed to maintain internal controls.  As a result of the foregoing, Nikola's public statements were materially false and misleading at all relevant times.

102.   As a direct and proximate result of the Director Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill.  Such damage includes, among other things, costs associated with defending securities lawsuits, severe damage to the share price of the Company, resulting in an increased cost of capital, and reputational harm.

## COUNT II

### (Against The Director Defendants For Gross Mismanagement)

103.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

104.    By their actions alleged herein, the Director Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the operations of a publicly held corporation.

105.    As a direct and proximate result of the Director Defendants' gross mismanagement and breaches of duty alleged herein, the Company has sustained significant damages in excess of hundreds of millions of dollars.

106.    Because of the misconduct and breaches of duty alleged herein, the Director Defendants are liable to the Company.

## COUNT III

### (Against The Director Defendants For Waste Of Corporate Assets)

107.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

108.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Period.  It resulted in continuous, connected, and ongoing harm to the Company.

109.    As a result of the misconduct described above, the Director Defendants wasted corporate assets by, inter alia: (i) paying excessive compensation, bonuses, and termination payments to certain of its executive officers; (ii) awarding self-interested stock options to certain

officers and directors; and (iii) incurring potentially millions of dollars of legal liability and/or legal costs to defend Defendants' unlawful actions.

110.    As a result of the waste of corporate assets, the Director Defendants are liable to the Company.

111.    Plaintiffs, on behalf of Nikola, have no adequate remedy at law.

## COUNT IV

### (Against The Director Defendants For Violations Of Section 14(a) of the Exchange Act

112.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

113.    The Section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Director Defendants. The Section 14(a) claims alleged herein do not allege and do not sound in fraud. Plaintiffs specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these nonfraud claims.

114.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security)

registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

115.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

116.    Under the direction and watch of the Director Defendants, the April and May 2020 Proxy Statements failed to disclose that: (a) the Company failed to adequately conduct due diligence prior to agreeing to merge with Nikola Motor; (b) the Company exaggerated and obscured the background and expertise of its primary employees; (c) the Company overstated Nikola's hydrogen production and "in-house" capabilities, such as its capacity to design, manufacture, and test its products; (d) consequently, Nikola overplayed its ability to reduce the cost of hydrogen fuel; and (e) the Company failed to maintain internal controls

117.    The May 2020 Proxy Statement was false and misleading because, despite assertions to the contrary, its Code of Conduct was not followed, as the Director Defendants allowed false and misleading statements to be issued to the investing public.

118.    In the exercise of reasonable care, the Director Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the April and May 2020 Proxy Statements were materially false and misleading. The misrepresentations and omissions were material to Plaintiffs in voting on the matters set forth for

shareholder determination in the April and/or May 2020 Proxy Statements, including but not limited to, approving the business combination proposal to approve and adopt the business combination agreement between VectoIQ and Nikola Motor, the amendment of the Company's certificate of incorporation to change its name to Nikola Corporation, among other revisions, to elect nine directors to serve on the Board, to approve and adopt the "Stock Inventive Plan Proposal" to approve the equity and incentive award plan to be effective after the business combination closed, to issue VectoIQ common stock to Nikola stockholders in connection with the business combination, to adopt and approve the employee stock purchase plan to be effective after the business combination closed, and to adjourn the special meeting to a later date to allow certain of the Director Defendant to solicit additional votes for the foregoing proposals.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

(A)     Declaring that Plaintiffs may maintain this action on behalf of the Company and that Plaintiffs are adequate representatives of the Company;

(B)     Finding Defendants liable for breaching their fiduciary duties owed to the Company;

(C)     Directing Defendants to take all necessary actions to reform and improve the Company's corporate governance, risk management, and internal operating procedures to comply with applicable laws and to protect the Company and its stockholders from a repeat of the rampant wrongful conduct described herein;

42

(D)     Awarding Plaintiffs the costs and disbursements of this action, including attorneys',

accountants', and experts' fees; and

(E)     Awarding such other and further relief as is just and equitable.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: October 19, 2020

**O'KELLY & ERNST, LLC**

*/s/ Ryan M. Ernst*
Ryan M. Ernst, Esq. (#4788)
824 N. Market Street, Suite 1001A
Wilmington, DE 19801
Telephone: (302) 778-4000
Email: rernst@oelegal.com

**GAINEY McKENNA & EGLESTON**
Gregory M. Egleston
Thomas J. McKenna
501 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: gegleston@gme-law.com
Email: tjmckenna@gme-law.com

*Attorneys for Plaintiffs*
